The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Happy to hear argument in Marine Repair Services v. Fifer. Good morning, Your Honors. As Your Honors know, this is a longshoreman's case dealing with a back injury where the worker never had any back surgery. There are two issues in front of the Court. First, did the Administrative Law Judge follow this Court's precedent of shifting burdens of proof on showing suitable alternative employment through labor market surveys? And then sort of a sub-issue, was there any substantial evidence to support what I can only say is speculation as to what the jobs require and what the claimant could do? And the second issue deals with the attorney fees and whether the Administrative Law Judge followed this Court's precedent in Westmoreland that one relevant factor is what paying clients actually pay the attorney. With respect to the shifting burdens of proof, this Court has held in three different decisions that it's really a pretty light burden for the employer. You merely need to do a labor market survey of available jobs, you don't have to actually contact employers, you can use standard job descriptions, and then the burden of proof shifts to the claimant to rebut that by trying to go find work and show that he can't do those jobs. In this case, we clearly don't have that because the claimant admitted he's never tried to find any employment other than with his family restaurant. Clearly, the evidence met that burden of proof for the employer because not only did we do a labor market survey, but the vocational expert went much farther. He actually contacted employers, he described the claimant, described the doctor's work restrictions, and all the doctors said, at least for the employers in his labor market survey, which he narrowed down once the doctor changed his work restrictions, all those employers said they can do the job with the doctor's work restrictions, that the manager can actually delegate any work that's a problem, and that they would, in fact, accommodate any work restrictions. The judge basically rejected the labor market survey without dealing with the shifting burden of proof, but instead just, I mean, I don't know how to say it, she just pulled things out of her hat in that, for example, the security jobs. She said, well, they couldn't do the security jobs because all security guards have to take a drug test, and they flunked the drug test even though the prescription medication was legal. There's nothing in the record that says any of the jobs require drug tests. There's nothing that says that prescription medication would flunk a drug test, and in fact, under the Americans with Disabilities Act, it would be illegal if you had a blanket prohibition against employers just because someone was taking legal medication. So there's absolutely nothing in the record to support that. She then said, yes, Your Honor. That is correct. It was conjectural, I guess, but she was also, the LJ was also concerned that the job duties themselves involved, made physical demands that it did not appear that the claimant was able to comply with, sitting and standing for requisite periods of time, for instance. And at least some of our authority does indicate that relevant factors in an employer's meeting its burden of proof include inquiries surrounding the claimant's intellectual and physical capabilities, age, background, etc. They are more geared, they're more personally tailored to what the claimant himself or herself is able to do. Sure, of course. And in fact, in this case, the vocational expert did all that. In fact, he contacted employers, described the work restrictions, they all said they would accommodate him. And in fact, my problem is, what the judge said were, her concern was over standing, need to take breaks, and the medication. Okay, but where is that in the record? The treating doctor gave no restriction on standing, he gave no prescription for needing rest breaks, and he didn't say the medication was a problem. In fact, just the opposite. I asked the doctor, and this is in the appendix, page 370, I said, okay, look, he's working at a family restaurant as a cook and also acting as a manager, any problem with that? And the doctor said, quote, not from my standpoint. So the doctor never gave any standing restrictions, he never restricted medication, never said rest breaks. The FCE, which the judge credited and the treating doctor credited, said he can stand frequently, he can walk constantly. So where's the substantial evidence that he can't stand and he needs breaks? Moreover, these employers said they would accommodate. They all said we would accommodate the person, and of course, he's the manager. You run the restaurant, he can delegate whatever he needs to delegate. So sure, if there was another doctor who said, you know, he needs rest breaks, he has standing problems, whatever, then she could make a finding that, okay, these jobs don't fit. The problem with this case is, the only evidence, at least we ignored our IME and just used the very evidence she used, and none of that would support any of those findings of fact. In fact, they're just the opposite. All the evidence she cites through the treating doctor and the FCE all say that he can stand frequently, he can walk constantly, and he can do the job as a manager. So your honor's correct. You have to at least get jobs in your labor market survey that meet the requirements of the treating doctor, if the judge credits the treating doctor, but that's exactly what the vocational expert did in this case. And of course, the vocational expert also explained, if he needed breaks, whatever, under the ADA, they're required to do that anyways, but this vocational expert was, I mean, I hate to say it, but he required a lot more than this court required. Let me ask this question. Was there some evidence in the record of a contact with Wendy's in Boston Market that say they were unsure they could accommodate any kind of standing issues? Yes, and that's why the vocational expert didn't rely on those. He relied on four jobs. Any job he couldn't confirm that they would accommodate and take care of them, he said, okay, I'm not going to rely on those. I'm just asking, was there evidence in the record that he had contacted those to find out there might be some standing issues? Yes, and in fact, I can't remember for those if they said they were standing or if he just couldn't confirm that they would accommodate, so he didn't rely on those. He relied on four where all four said that they would accommodate. I'm asking, could the ALJ make anything of that fact? Well, she could reject those jobs based on that, but she can't reject the four jobs where they said they would accommodate. I don't mean that. I mean, could she in her analysis, I'm asking, do you think in her analysis she could take into account that there was at least some information in the research? I don't even think it said it was a problem. I think they were unsure they could accommodate is a better way to say it. Yeah, I think that was accurate. Could she use that in her analysis? I don't think so, Your Honor, because, of course, substantial evidence requires you to rely on what's in the record. What's in the record is that the four jobs the vocational expert relied on all said they would accommodate the worker, and they also pointed out that for those jobs, they're the manager, they could control it. I'm asking a slightly more technical question. If that information was in the record and you tell me that it was, although it was not relied upon in preparing the report, could that be part of the substantial evidence that you would look at as to whether or not we would uphold her finding and how she viewed the situation? I don't think so, Your Honor, because I don't see how you could say because job X requires something, I can then conclude job Y requires it. I mean, I think there's obviously no connection. By the way, that also assumes there was some medical evidence that he had a problem with standing. I mean, the other problem with the decision is there was no medical evidence he had a problem with standing. In fact, the medical evidence was just the opposite. The doctor didn't restrict his standing, and the F.C.E. said he could stand frequent and he could walk constant. I mean, if she wanted to reject the F.C.E., she could have done that and explained it, but she did just the opposite. She says, I credit the F.C.E., I credit the treating doctor. So the question is, how can you, on the one hand, credit the doctor, credit the F.C.E., and then come up with basically your own work restrictions that are different from what the doctor had? I mean, substantial evidence allows the judge, obviously, if there are two competing doctors. Well, just let me say this. We often get cases in which a judge will say, I credit both sides' testimony. I mean, credit doesn't necessarily mean that I accept it totally, do you think? I'm just asking. That's another technical question because we sure get cases when the judge will go, I credit Y's testimony, I also credit Z's testimony, and then somehow the judge below will figure out a way to decide who's met the burden. I don't know that credit means that I accept 100%. If I could just say, but even if you assume she didn't want to accept all of what they said, there would have to be somebody on the other side saying something different. That's where her problem is. I wouldn't have filed this appeal if we had competing experts, and she just said, I believe they're experts, not ours. I understand under the substantial evidence test that's a loser. But the ALJ rejected Mr. Sappington's proffers in part after finding that his questions focused on lifting, I thought. In fact, I think she said almost exclusively on lifting and did not provide any information as to whether the jobs required standing or sitting for long periods of time without a break. And that's largely true, but the reason for that is no doctor restricted his standing. I don't think there's anything in the record that actually says he's limited in standing. All the claimants said was I once had to take a break on my current job. Didn't she also credit the testimony of his family that there's a limit to the amount of time he could work on any given day, and also expressing concern about the amount of pain medication he was taking? Well, but I suppose there's two questions. One is, OK, can a layperson's opinion overcome a treating doctor's own opinion? And if it does, the judge has to explain that. She would have to say, look, I think the treating doctor's an idiot. I'm going to believe a layperson. Frankly, I don't think you could do that. I don't think that would meet the substantial evidence test. I'm not sure that that was even before her because there was no dispute as to whether or not there was a disability. The only question, and to some extent your argument, I think, conflates the two issues. It's a given that he was disabled. The question is, what is he able to do? And on that question, you have the burden of proof, and you don't dispute that either. Well, actually, I have the burden of proof of showing suitable jobs. Right, that takes into consideration his capabilities. That is correct. And, again, if there was another doctor who said he didn't have these capabilities. But the problem is the vocational expert did exactly what the treating doctor said. And, in fact, he went much further because he even got the restaurants to say we would accommodate the person. So there's nothing in the record that says for the four jobs he relied on that those jobs require constant standing. There's nothing in the record that said they don't give breaks. And, in fact, it's just the opposite, that they said they would accommodate the manager. So I think that's the problem. So you think Sappington went beyond what was required by contacting those restaurants? Absolutely. He went way beyond what this court required. He gave his analysis but didn't check it out, sort of. Yeah. Well, yeah, because the court's requirement is, and I think it's fair, because remember, the ultimate burden of proof is on the claimant under Greenwich Collier in the Supreme Court. So the shifting burden of proof is a little bit against that. But you can make it work because you say, okay, we're going to have a slight burden of proof for the employer. You've got to come up with some jobs. And, as Judge Duncan said, they have to be consistent with what the work restrictions are. But, in this case, he did the exact work restrictions of the treating doctor of the FCE. And, again, you know, I suppose could you say theoretically the judge could have rejected the treating doctor's work restrictions? I mean, one is, I think that wouldn't really meet the substantial evidence test. But even if it did, she didn't do that. She actually credited this treating doctor. That's the problem. If I can just take a moment on the attorney fees issue. I mean, this court has said, not surprisingly, one relevant factor is what paying clients pay. And part of the trouble with Longshoreman's Act is claimants almost never pay. So it's either the employer pays or the claimant's attorney doesn't get paid. There's a few rare examples where the claimant actually pays. So you can say my normal Longshore billing rate is $1 million an hour because the only person who pays it is an employer. And, obviously, that's not at arm's length. And so I think in Westmoreland, this court properly said, we need to know what you're paying clients say, or at least that's relevant evidence. So what do we do with that? Well, first of all, I think on that you need remand, basically instruct the judge to give us that disclosure. I mean, we don't even need a deposition. She can just order the claimant to produce it. And I also have to note, if, in fact, the court vacates or reverses on the residual earning capacity, then the attorney fee has to be vacated anyways because one factor on an attorney fee is a degree of success. And, obviously, if the court accepts our argument that the residual earning capacity is $800 a week, then, in fact, the degree of success has changed. So if there are no more questions, I'll sit down. Thank you. Mr. Pertico. Briefly on the attorney fee issue, I, as counsel of record in that case, did comply with Westmoreland. I was asked by the judge and pursuant to the law to submit evidence of what the market rate was. I submitted an affidavit along with three letters from local attorneys who practice in this area of law confirming the rate that I quoted as being the market rate. The question is whether I complied with what that burden is. And based upon the evidence, I did. What counsel is asking this court to do is to allow an inquiry into cases that I may handle which have nothing to do with Longshore Harbor Workers Act cases. That's not the standard. The standard is what type of work do you do and what is your hourly rate for those types of cases. That is Longshore cases. I submitted evidence to Judge Chapman of an hourly rate which was approved by the district director. What are the underlying merits of the case? Your opposing counsel is saying that here the award of permanent partial disability was simply not supported by competent medical evidence. What you're relying on and what the ALJ relied on was simply lay evidence. It wasn't confirmed by a medical opinion. I realize it may have been confirmed by an MRI or what have you, but the medical opinion here is what was lacking. Your Honor, it was confirmed by MRI that he has a herniated disc in his low back with pain radiating down the leg. It was also confirmed by medical opinion that he can't lift in excess of 25 pounds. His standing and sitting was restricted to frequent, as Mr. Postol says. But as a reality and as a factual matter, my client testified that he frequently has to take breaks at this restaurant, at the family restaurant. He has to lay down on the job at times. That testimony was corroborated by his brother, Tracy Pfeiffer, and I would submit to the court that Tracy Pfeiffer is no advocate for his brother in this case. Tracy Pfeiffer testified rather matter-of-factly about what his brother's physical limitations are. You do see the problem that that poses, however. We've established disability, and no one disputes that. We have recommendations from the treating physician, which primarily focus on weight restrictions. He's restricted from frequent lifting and carrying over 10 to 15 pounds, lifting and carrying over 25 pounds, and sitting for more than 45 minutes without standing, without changing positions. That's the treating recommendation that went into the disability finding. Correct. The employer actually correctly notes that the ALJ took issue solely or primarily with the fact that the vocational rehabilitation expert focused on lifting. Well, the treating physician's limitations focused almost exclusively on lifting. So the employer can say with some justification that the vocational rehabilitation expert was penalized for focusing on precisely what the treating physician focused on and not going beyond it. Understood, Your Honor. But there's additional evidence in the case in terms of deposition testimony from the claimant as to what his limitations are. I understand that Dr. Franchetti put the 25-pound weightlifting restriction and said that it was okay for him to work in a restaurant setting. Now, bear in mind that Dr. Franchetti was answering that question based on the job that he had at Pfeiffer's, which was giving him significant accommodations in terms of his need for breaks, in terms of his need to sit down from time to time. He is on a regimen of medication, three different types of medication, which the trial judge reasonably inferred could affect his ability to work an eight-hour shift. His family accommodates him in that regard. There's no indication in the record that the labor market study did address any of those issues. All it addressed was the 25-pound weightlifting restriction. And their argument, therefore, is that because these restaurant chains will accommodate a 25-pound weightlifting restriction, that you can do that job. Do you believe that if we were to say, if this court were to say, that the ALJ improperly rejected the third market survey and remanded it, do you think you automatically lose or do you think there's evidence in the record from which you could still win? It seems to me that's the argument you're making right now. There's other evidence that's in the record that could support what the ALJ did. So do you understand my question? Yes. What's your answer? Yes. I believe that we would prevail on a remand if it were on that. On remand, if we say that she'd have to consider that, do you think there's still evidence in the record from which you could argue and win the case? I believe so. Because the evidence- That's consistent with the argument you were making. Which is not contradicted, is that he can't stand for extended periods of time without rest breaks. And the judge credited that testimony. His testimony was that because of the spasms that I have in my back, because of the leg pain that I have as a result of the disc herniation, I frequently have to lay down on the job. When was the first time he said in the record that he couldn't stand, specifically that?  Your Honor, I do have- Was it at the hearing or was it before the hearing? He testified at the trial. He testified to that at the trial. Had he made the point about the standing limitation, is that anywhere in the record before specifically now that I cannot stand for that long? Was that ever made before the hearing? Your Honor, I'm not certain. I don't recall whether he testified to that at deposition, which was taken many months before the trial. I don't recall that. I know that he testified to that at the trial. How does an employer know what to look for in terms of employment if it's not framed by the treating physician and the medical testimony in the case? Well, it was somewhat framed in the work hardening reports and in the functional capacities evaluation because it addresses the amount of standing and the amount of sitting that he can do. It does say frequent, but it doesn't address what he was actually doing at Pfeiffer's, which is taking breaks on the job periodically. I guess the question, to follow up on Judge Duncan's point, is one of notice. If the employer is going to be asked to provide labor market surveys and the ALJ rejected them, and is insufficiently detailed as about what jobs they were talking about, shouldn't there be, simply as a matter of notice, some basis and a medical opinion as to what the disability is? And I think, from your standpoint, that's the troubling aspect of the case, is that the evidence may have been around the point, and there was some family testimony, and there was the MRI of the herniated disc, and a herniated disc, lower back pain, very often radiates into the leg, and so you can infer, well, if you have a herniated disc, you're likely to have some problems with prolonged standing, or you're going to have to alternate sitting, standing, lying, and all of that. But the question is, if the employer is being asked to provide detailed, I mean, the labor market surveys were rejected because they were insufficiently detailed as to what jobs they were talking about, and I guess one of the questions that's being asked  don't you yourself have to be somewhat detailed as to what impairment you're talking about? And I'm talking, you can't just be sort of puzzling around it. The question is whether there has to be some degree of precision located in medical opinion, and we could be asking ourselves, we haven't seen that many cases where there isn't even a note from the treating physician which locates the exact nature of the disability, the standing problem. You see what I'm saying? I do, Your Honor. Dr. Franchetti did indicate a 31% anatomic impairment to the low back as a result of the disc herniation. Did he specifically address how long he could stand in terms of hours? No, he didn't. But he did say that he has significant limitations. But the FCE does say, as Maureen pointed out, stand frequent, walk constant. Understood. I understand that that's what it says. Still, I think that based on the report of Dr. Franchetti, to simply say that if a job is available where it doesn't require lifting in excess of 25 pounds, that the employer has met the burden, I don't think that's really the standard here. The other thing to consider is what did Mr. Pfeiffer do? What did he do to obtain realistic employment? He's the one that went out and got the job. It was tailored to what his restrictions are. There's no indication in the record that the proposed jobs would accommodate him. And I would dispute Mr. Postol on that. All it says is that we will accommodate a 25-pound weightlifting restriction. It doesn't say anything about amount of standing, amount of sitting, whether he can take rest breaks. It doesn't say anything about that. So on that basis, the ALJ is left to speculate, in our view, that he could do that job. Now, bear in mind that as far as substantial evidence is concerned, Mr. Pfeiffer had not worked in the restaurant business for five years. His trade, his expertise is that of a mechanic. So is it really practical to suggest that he could walk into Burger King or Wendy's or any of these proposed restaurant establishments, which are fast food restaurant establishments, and get that job? Well, that really isn't the standard, though. It's not a can he compete in the marketplace. Can he realistically compete for that job? And I think that there's substantial evidence in the record that he couldn't realistically compete. I thought the question was more whether he could perform the job. I mean, I'm not sure the question is can you compete for the job. It's can you do the job. Isn't that the standard? Well, I believe it's whether you can realistically compete and secure the job. No, actually it's can the employee perform the job. Very well. I don't think that he can. I think there's substantial evidence in the record that he can't. Well, were you arguing that you didn't think the record indicates he could get the job? Or is your argument, that's what I thought you were arguing too, but your argument now is that we've looked at the standard, whether or not he can do the job. Do you think that you're arguing that on the same evidence, you should have been arguing he can do the job? That he cannot do the job. I mean, the question is whether he can do the job. He cannot do the job, and because he can't do the job, he can't realistically compete for it. I was under the impression that, and this is just anecdotal, but that security guards do a lot of sitting. I mean, there's security guard positions and there's security guard positions, but not all of them involve standing all the time. Most of the security offices where I've walked through into a high-rise building, in the reception area you find a security guard, and the security guard will be sort of a dual function maybe as a receptionist security guard. The security guard will be sitting behind a big, broad desk in the front lobby, giving directions and doing whatever kind of checks are necessary. So, I mean, even if he had an impairment standing, aren't there probably the majority of security guard positions that do not require prolonged standing? I understand Your Honor's point, but the security job position, in our view, is really a non-starter because it doesn't pay more. It doesn't pay what he's earning at Pfeiffer's, or it pays approximately what he's earning at Pfeiffer's. I would submit to the court that he has a greater possibility of advancement or increasing his wage earning capacity by trying to go back to doing what he was doing. The security job paid $20,000. Judge Chapman also made the point, and it was argued, that he is on a regimen of medication, and I don't believe that it's speculation. I believe it's reasonable inference that the court can draw that they would require some sort of drug testing, and he's on a regimen of medication, three different types of medication. But a lot of security guards in places I go are a little bit older. Are there any older Americans who are on some kind of prescription medication for something? Very well. I mean, it seems to me odd to think that taking a prescription medication limits you from getting a job when you get older because it's just a fact of physiology. I'd also note that Judge Wilkinson knows what he's talking about, about people sitting, because he's so well respected, anytime he enters a building or a room, whoever's sitting stands. So he would, of course, notice that correctly. Very well. But I will make the point to the court that it doesn't increase his wage-earning capacity. A security job was a $20,000-a-year job. He's already earning that. I'm over my time. Thank you, Your Honors. Thank you. All right. I think, as Your Honors noted— Let's hear something from you in rebuttal, Mr. Poston. Sure. Thank you, Your Honor. The claimant's counsel said, what was Mr. Pfeiffer to do? Well, the court's standards under its case law says, to rebut the Employer's Labor Market Survey, you have to go out, try to find work, and then show that those jobs are inappropriate or you can't do them. And obviously, we don't have that here. But he did—the claimant does make the point that, yes, he found four positions that were consistent with the treating physician's recommendations, but they focused solely on the lifting and didn't consider at all the standing, sitting, and respiring. Sure. And I think, as Your Honors point out, that's because that's what the doctor did. That's what the FCE did. In fact, I went through the transcript the hour before. I actually couldn't find anywhere where he said he couldn't stand. What he said was, I once took a break because I had back spasms and I laid down on the picnic table. So I actually don't think the claimant actually said he couldn't stand. He actually works as a cook there. I mean, in summer jobs, I worked as a cook, and there aren't many jobs that are more physically demanding than being a short-order cook. But we also go back to nowhere in the medical evidence is there any lifting standard. Your Honor mentioned an MRI. I think I mentioned in this case, but MRIs are just too sensitive. The fact is there are studies that take 100 people off the street with no back symptoms at all. They give them MRIs, and 30% have herniated discs. So the fact that you have a herniated disc on an MRI doesn't mean you actually have symptoms. But more important, and it's not accidental that the doctor did not put standing restrictions. I'm trying to boil your position down, and this may be what Judge Duncan is getting at, but just trying to understand what the essence of your position is. Is the essence of your position that unless we have fair notice of what the disability is, which is grounded in medical opinion, in some medical opinion or testimony, we can't provide the kind of job information that we're expected to under the Act, that we're just not put on sufficient notice as to what the disability is, and with that we can't go out and look and come up with the job specifications? Is that correct? That's basically yes. I think I'd take it one step farther. I would say in this case there isn't even substantial evidence of a standing restriction, but I think it's also true exactly what Your Honor said. If the vocational expert follows a doctor's work restrictions, that meets our burden of proof. Now the burden shifts to the claimant to go out and try to find a job and show he can't do it. Judge, you asked about whether we should reverse or remand. No, I didn't ask that. I said if we were to remand based on that she improperly rejected, what would the result be? And I guess my, I hate to say plea, but plea is that it reverse and instate the $800. And the reason for that is there is no other evidence. There's no evidence to rebut. There's no medical evidence to rebut the labor market survey. You don't want to do a fourth study? I'm not particularly interested. And frankly, if I can be frank, I'm not really that eager to go back to the judge because on the attorney fee issue, when the board remanded that, she just threw out our evidence. And said, well, I looked at your evidence. Thanks. My decision's the same. So if I can be candid, my fear is we'll get the same thing. But what about this? I asked the other side of the question. If that is rejected, do you think there's evidence from the record from which you can still win? Not surprisingly, they said yes. Yeah, but where? What? There's no doctor. I mean, there's no medical evidence. No doctor has put a restriction on. And all you have is a claimant saying once, you know, I had to lie down because I had spasms. And, in fact, the four employers did actually say they would accommodate. And under the ADA, you have to accommodate. You can't fire somebody because they have a medical condition that requires them to take a 15-minute rest. Did the claimant testify at the hearing that he could not stand or he had trouble standing? I did not see that. I just looked this morning, so I could be wrong. I just had the impression of that. But I'm somewhat boasted about what the other side said, but I'm just not sure. What I saw was him saying that I had back spasms and I had to lie down on a picnic table. That's all I could find. Is your point a broader one that extends beyond the Workers' Compensation Act of disability statutes of all types, the ADA and things that are not just providing labor market surveys but in providing reasonable accommodations? Under the ADA, employers are entitled to ask reasonable accommodations to what? Absolutely. I mean, I don't want to say the world's going to come to an end, but if what you're saying is any employee can go to trial and say, I'm in pain, I can't work, even when all the medical evidence is to the contrary, I mean, you have pretty much havoc at that point. I mean, I've been doing this too long, and maybe I'm just too cynical, but when people have the chance to get money, and in this case, the claimant had the chance not only for Workers' Comp, but as a third-party civil case, it's been my experience that that doesn't always bring out the best in people. Let's just put it that way. And so if you're not going to rely on medical evidence and we're just going to say whatever a claimant says, the judge can grab hold onto, and again, in this case, I don't even think he said it. Well, I think it's suffice to say it doesn't meet the substantial evidence test. Thank you, Your Honor. We thank you, sir. We'll come down and greet counsel, and then we will move to our next case.
judges: J. Harvie Wilkinson III, Dennis W. Shedd, Allyson K. Duncan